UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| LORI ANN DAVIS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:13-CV-251 RLM |
| | ) | |
| BIOMET ORTHOPEDICS, LLC, et al., | ) | |
| | ) | |
| Defendants | ) | |

OPINION AND ORDER

Lori Ann Davis filed suit in Maryland state court against defendants Biomet Inc. and Biomet Orthopedics, LLC (collectively Biomet) and Mid Atlantic Medical, LLC (Mid Atlantic), alleging negligence, failure to warn, breach of express warranty, breach of implied warranty, fraud, fraudulent misrepresentation, intentional misrepresentation, fraudulent concealment, violations of the Maryland Consumer Protection Act, and civil conspiracy, all relating to the alleged failure of her Biomet M2a-Magnum hip implant. The defendants removed the case to the District of Maryland based on diversity of citizenship, and the Judicial Panel on Multidistrict Litigation transferred the case into the Biomet multi-district litigation docket in this court.

This matter is before me on Ms. Davis's motion to remand her case to the Circuit Court of Baltimore City, Maryland, where the action originated. For diversity purposes, plaintiff Lori Davis and defendant Mid Atlantic are citizens of Maryland; the Biomet defendants are citizens of Indiana. The defendants removed

this case to federal court based on their claim that the citizenship of Mid Atlantic should be disregarded for diversity purposes because Ms. Davis can't prevail on any of her claims against Mid Atlantic and Mid Atlantic was fraudulently joined solely to defeat diversity. Ms. Davis counters that Mid Atlantic is a proper defendant, so complete diversity is lacking and remand is proper. Ms. Davis also asks that she be awarded attorneys' fees for the costs she has incurred in opposing Biomet's removal of this case to federal court.

## I. STANDARD OF REVIEW

For a federal court to have jurisdiction over a suit based on diversity, there must be complete diversity of citizenship – no defendant may share the citizenship of any plaintiff. 28 U.S.C. § 1332(a). A plaintiff can't fraudulently join a non-diverse defendant solely for the purpose of destroying diversity jurisdiction. Schur v. L.A. Weight Loss Ctrs., Inc., 577 F.3d 752, 763 (7th Cir. 2009). "Fraudulent" in this context doesn't mean bad faith on the plaintiff's part; it means that the claims against the non-diverse defendant have no realistic chance of success. Poulos v. Naas Foods, Inc., 959 F.2d 69, 73 (7th Cir. 1992). To decide whether joinder was fraudulent, a court must ask whether, "after resolving all issues of fact and law in favor of the plaintiff, . . . there is any reasonable possibility that the plaintiff could prevail against the non-diverse defendant." Schur v. L.A. Weight Loss Ctrs., 577 F.3d 752, 764 (7th Cir. 2009) (internal quotation marks omitted). The party seeking removal – or, as here, resisting

2

remand – bears the heavy burden of showing that joinder was fraudulent. Schur v. L.A. Weight Loss Ctrs., 577 F.3d 752, 763 (7th Cir. 2009). If the removing defendant meets that heavy burden, the district court "may 'disregard' the nondiverse defendant" for jurisdictional purposes, such that the fraudulent joinder doctrine acts as "an 'exception' to the requirement of complete diversity." Morris v. Nuzzo, 718 F.3d 660, 666 (7th Cir. 2013) (*quoting* Walton v. Bayer Corp., 643 F.3d 994, 999 (7th Cir. 2011)).

The fraudulent joinder analysis requires a court to determine whether the plaintiff would have any reasonable possibility of success against the non-diverse defendant under applicable state law. Schur v. L.A. Weight Loss Centers, Inc., 577 F.3d 752, 764 (7th Cir. 2009). In deciding whether a defendant has been fraudulently joined, a court isn't limited to the pleadings, but may instead consider evidence of the sort seen in summary judgment motions, such as affidavits and deposition testimony. Millman v. Biomet Orthopedics, Inc., No. 3:13-CV-77, 2013 WL 6498394, at *2 (N.D. Ind. Dec. 10, 2013); Siegel v. H Group Holding, Inc., No. 07 C 6830, 2008 WL 4547334, at *3 (N.D. Ill. Apr. 9, 2008) ("[A] limited use of affidavits and other evidence is permissible so long as the evidence is not used to 'pre-try' the case."); *see also* Hack v. SAI Rockville L, LLC, No. WDQ-14-1985, 2015 WL 795853, at *4 (D.Md. Feb. 24, 2015) ("The Court may consider the entire record, not only the complaint, to determine the basis of joinder by any means available. But, it may not act as a factfinder or delve too far into the merits in deciding a jurisdictional question.") (internal quotations and citations omitted).

The parties agree that Maryland law governs, and that in Maryland, sellers and distributors of a product ordinarily can be held strictly liable for product defects. *See* Owens-Illinois, Inc. v. Zenobia, 601 A.2d 633, 643 (Md. 1992) (in cases involving products that are defective when sold, "middlemen or intermediate sellers of the defective product are strictly liable to the plaintiff user just as the manufacturer is liable to the plaintiff").

II. DISCUSSION

*Sealed Container Defense*

Biomet maintains joinder of Mid Atlantic was fraudulent. According to Biomet, even though distributors and sales representatives are subject to liability in Maryland product liability cases, Ms. Davis's claims against Mid Atlantic are defeated by an exception to that general rule: Maryland's "sealed container doctrine." That doctrine, codified in the Maryland Courts and Judicial Proceedings Code, provides that "[i]t shall be a defense to an action against a seller of a product for property damage or personal injury allegedly caused by the defective design or manufacture of a product" if the seller[1] can establish that:

>(1) the product was acquired and then sold or leased by the seller in a sealed container or in an unaltered form;

>(2) the seller had no knowledge of the defect;

---

[1] The term "seller" is defined in the statute as including a "distributor." MD. CODE ANN., CTS. & JUD. PROC. § 5-405(a)(5)(i).

4

> (3) the seller in the performance of the duties he performed or while the product was in his possession could not have discovered the defect while exercising reasonable care;
>
> (4) the seller did not manufacture, produce, design, or designate the specifications for the product which conduct was the proximate and substantial cause of the claimant's injury; and
>
> (5) the seller did not alter, modify, assemble, or mishandle the product while in the seller's possession in a manner which was the proximate and substantial cause of the claimant's injury.

MD. CODE ANN., CTS. & JUD. PROC. § 5-405(b). The sealed container defense is unavailable if any of the following exceptions apply:

> (1) the manufacturer is not subject to service of process under the laws of [the State of Maryland] or the Maryland Rules;
>
> (2) the manufacturer has been judicially declared insolvent in that the manufacturer is unable to pay its debts as they become due in the ordinary course of business;
>
> (3) the court determines by clear and convincing evidence that the claimant would be unable to enforce a judgment against the product manufacturer;
>
> (4) the claimant is unable to identify the manufacturer;
>
> (5) the manufacturer is otherwise immune from suit; or
>
> (6) the seller made any express warranties, the breach of which were the proximate and substantial cause of the claimant's injury.

MD. CODE ANN., CTS. & JUD. PROC. § 5-405(c).

Biomet relies on the declaration Brett Shoop, the principal for Mid Atlantic Medical, LLC, Defts. Exh. B (Shoop Dec.), to support its position that Mid Atlantic's distribution of Biomet implant products falls within Maryland's sealed container doctrine and that no exceptions to the defense apply. Mr. Shoop reports

5

the following: Mid Atlantic is an independent contractor sales representative for Biomet that played no role in the design, manufacture, development, testing, packaging, or labeling of Biomet orthopedic implants, Shoop Dec., ¶¶ 2, 17; Mid Atlantic receives implants from Biomet that are labeled, packaged, and sealed by Biomet before the products are shipped to Mid Atlantic, Shoop Dec., ¶ 8; Mid Atlantic representatives don't alter the packaging, labels, or implants in any way while they have the sealed packages, Shoop Dec., ¶ 10; and Mid Atlantic representatives don't inspect or examine the implants or remove them from their packaging before an implant procedure. Shoop Dec., ¶ 11. According to Mr. Shoop, "Typically, Mid Atlantic simply hands the unopened box containing the requested implant to the circulating nurse in the same packaging in which it was shipped to Biomet. The surgical staff typically opens the box and removes the implant from the box and the internal packaging using special procedures to maintain the sterility of the implant." Shoop Dec., ¶ 11.

Mr. Shoop says Mid Atlantic received no complaints about the Magnum device before Ms. Davis's September 15, 2008 surgery, Shoop Dec., ¶ 16, and didn't know or have reason to know of any defects in the product or deficiencies in the warning labels, Shoop Dec., ¶ 12. Mr. Shoop says, too, that Mid Atlantic "never made any representations or statements or provided any express or implied warranties regarding any Magnum device to any physician, including plaintiff's surgeon, or any member of the public, including Ms. Davis," Shoop Dec., ¶ 14, and neither he nor any Mid Atlantic representative had any direct dealings or

communications with Ms. Davis. Shoop Dec., ¶ 14. Biomet maintains Mr. Shoop's declaration establishes that the sealed container defense applies to Ms. Davis's claims against Mid Atlantic based on its distribution of Biomet implants and none of the statutory exceptions bar the applicability of that defense.

Ms. Davis disagrees. She asserts that even though Mr. Shoop stated that neither Mid Atlantic nor any of its representatives change Biomet's packaging or labeling of the implants while the sealed packages are in their possession, he didn't address a number of the activities she has alleged Mid Atlantic representatives to have undertaken – *i.e.,* actively promoting and marketing the Biomet Magnum device to surgeons, surgical groups, hospitals, surgery centers, and end users; educating surgeons about the Biomet Magnum device and training them on the proper use of the tools necessary to implant the Magnum device; training physicians and surgeons on the selection of complementary components to Biomet's Magnum device; and answering surgeons' questions, preoperatively and intraoperatively, about the Biomet Magnum device – activities Ms. Davis says put Mid Atlantic and its representatives in a position to know or learn of defects in the Magnum device and to make express warranties and misrepresentations to physicians, including her own surgeon, and other healthcare providers about the Magnum device.

Ms. Davis says, too, that Mr. Shoop's declaration says nothing about another relevant issue: that Mid Atlantic representatives provide direct service to doctors and other healthcare providers, both inside and outside the operating

room, during the implanting of Biomet's Magnum devices. Ms. Davis alleges that a Mid Atlantic employee was present during her initial procedure when she received a Biomet Magnum device and also during her revision procedure. As Ms. Davis notes, "[i]t is unlikely that [Mr.] Shoop can speak on behalf of the knowledge held by all of [Mid Atlantic's] current and former employees with regard to [their] activities and individual personal knowledge of Biomet Magnum hip implants . . . , or can encapsulate what was said by those employees in their various contacts with doctors, hospitals, and other medical personnel." Reply, at 6. Ms. Davis claims that by providing advice and assistance to surgeons during hip replacement procedures involving Biomet Magnum devices, Mid Atlantic employees are in a position to make warranties and/or misrepresentations about Biomet products, an issue Mr. Shoop didn't address.

Ms. Davis also alleges that because studies had taken place and reports had been published before her surgery, Mid Atlantic knew or could have known of the risks associated with the Magnum device. Ms. Davis cites to studies and publications that include Adverse Event Reports submitted to the FDA and specific medical journal articles that all raised concerns about an unreasonably high risk of injury posed by Magnum-styled implants many years before her receipt of a Biomet Magnum device. Ms. Davis alleges that because Mid Atlantic and its representatives received continuous training and detailed product information from Biomet about the Magnum devices, Mid Atlantic and its representatives knew or could have known about the Biomet product defects.

8

Lastly, Ms. Davis says Mr. Shoop's declaration statements stand in contrast to pleadings Biomet filed in other cases, specifically noting a 2007 action Biomet filed in this court against three of its former distributors to enforce a non-compete clause. In Biomet v. Fields, Cause No. 3:07-CV-346 RLM, Biomet explained the expansive role of its distributors and sales representatives:

> One of the most important ways that Biomet invests in [healthcare customer] relationships [is] through training its distributors and sales representatives. Upon becoming a Biomet distributor or sales representative, Biomet educates the distributor and representatives with detailed confidential information about Biomet's products, business strategies, pricing, and customers. Biomet continues its training of the distributors by providing updated products, business strategies, pricing, and customer information as developments arise. Biomet then relies on its distributors and sales representatives to nurture Biomet's customer relationships. The distributors, in part, are charged with assisting Biomet with introducing Biomet customers in their territory to new products and to secure further orders from those Biomet customers. Biomet distributors also are typically on the 'front line' to deal with any customer issues, problems, or questions that may arise. As a result of this intense hands-on and direct interaction, Biomet's distributors become intimately familiar with Biomet's customers and their needs.

Compl. [docket # 1 in Cause No. 3:07-CV-346], ¶¶ 12-13. While Biomet complains that the Fields case contains no facts specific to Mid Atlantic, Ms. Davis claims that Biomet's own statements about the role its distributors play in marketing and selling Biomet products could demonstrate that like other Biomet distributors, Mid Atlantic knew about or could have discovered defects in Biomet hip products in a variety of ways.

While a court can consider affidavits and other evidence in ruling on a motion to remand, the permissible evidence is limited to "uncontroverted . . .

9

evidence which establishes unmistakably that a diversity-defeating defendant cannot possibly be liable to a plaintiff under applicable state law." Rutherford v. Merck & Co., Inc., 428 F. Supp. 2d 842, 848 (S.D. Ill. 2006). Ms. Davis alleges that based on Mid Atlantic's close relationship with Biomet, Mid Atlantic knew or could have known that the Magnum device was defective, and Mid Atlantic representatives were in a position to make express warranties and/or misrepresentations about Biomet Magnum devices to surgeons and physicians, including her own. Mr. Shoop's testimony isn't uncontroverted evidence that unmistakably establishes that Ms. Davis can't reasonably prevail against Mid Atlantic under Maryland state law.

Resolving all issues of fact and law in favor of Ms. Davis, I conclude that Biomet hasn't met its heavy burden of showing that there is no reasonable possibility that Ms. Davis could succeed on her claims against Mid Atlantic. The allegations of Ms. Davis's complaint, if proven, could show that Mid Atlantic knew or could have known that the Magnum device was defective, removing Mid Atlantic from the protection of the sealed container doctrine, and/or that Mid Atlantic representatives made warranties, the breach of which caused Ms. Davis's injuries. Thus, Mid Atlantic wasn't fraudulently joined, jurisdiction in this court isn't proper under 28 U.S.C. § 1332, and Ms. Davis's motion for remand will be granted.

Because Ms. Davis states a claim such that Maryland law might impose liability on Mid Atlantic under the facts alleged, I needn't address the other issues

raised by the parties, *i.e.*, whether Mid Atlantic could be held liable for fraud, civil conspiracy, or a violation of the Maryland Consumer Protection Act.

*Request for Fees*

Ms. Davis has requested, pursuant to 28 U.S.C. § 1447(c), that she be awarded the fees she incurred in opposing Biomet's removal of this case to federal court. Plaintiffs are entitled to attorneys' fees in removal cases "only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). A defendant will be found to lack an objectively reasonable basis for seeking removal if "clearly established law demonstrated that he had no basis for removal." Lott v. Pfizer, Inc., 492 F.3d 789, 793 (7th Cir. 2007). "The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." Martin v. Franklin Capital Corp., 546 U.S. 132, 140 (2005).

Biomet didn't carry its burden of establishing that Ms. Davis had no possibility of recovery against Mid Atlantic, but its bases for removal weren't objectively unreasonable. *See* Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc., 959 F. Supp. 2d 783, 798 (D.Md. 2013) ("[A] plaintiff has every right to do all that is possible, within the bounds of ethical constraints, to ensure that his case

11

remains in state court; a defendant has an equally defensible privilege to do all it can, under like constraints, to push or pull the action into federal court.") (internal quotation and citation omitted). I will deny Ms. Davis's request for fees.

III. CONCLUSION

Ms. Davis has alleged a claim that isn't clearly barred by Maryland's sealed container doctrine, so Mid Atlantic's joinder wasn't fraudulent, diversity of citizenship isn't complete, and this court lacks subject matter jurisdiction over the claims of Ms. Davis's complaint. The court, therefore, GRANTS Ms. Davis's motion to remand [docket # 11], DENIES her request for fees, and ORDERS this action REMANDED to the Circuit Court of Baltimore City, Maryland for further proceedings.

SO ORDERED.

ENTERED:  April 25, 2016 

/s/ Robert L. Miller, Jr.
Judge, United States District Court